UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PRO TEM PARTNERS, INC., Plaintiff | ) |
| V. | ) Civil Action No. 1:05-cv-11822 |
| SEMICO RESEARCH CORPORATION Defendant | ) |

MEMORANDUM IN SUPPORT OF
DEFENDANT SEMICO RESEARCH CORP.'S
MOTION TO DISMISS

Prior Proceedings

Plaintiff Pro Tem Partners, Inc. (hereinafter "Pro Tem") filed this action in the Middlesex Superior Court Department of the Commonwealth of Massachusetts on August 1, 2005. See Dkt. 4. Defendant Semico Research Corp. (hereinafter "Semico") was served on August 23, 2005. Ibid. On September 7, 2005, Semico removed the case to Federal Court, on the basis of diversity jurisdiction. Dkt. 1.

The Complaint alleges that Semico and Pro Tem are parties to a Sales Representative Agreement (¶ 4), that in January 2005 Semico began to unreasonably restrict Pro Tem's efforts and engaged in a harassment campaign in breach of the Agreement (¶ 5). In Count I, Pro Tem seeks damages for breach of the Agreement and for terminating the Agreement. (¶ 8-10). In

Count II, asserting a claim under Mass. G.L. c. 93A[1], Pro Tem alleges that Semico's conduct was intended and designed to force its sole owner, Fine, to sell his ownership interest in Semico and to force Pro Tem to waive or compromise its rights under the Agreement. (¶ 12-15).

On September 13, 2005, Semico filed an Answer to the Complaint. The Answer admits that Semico has terminated the Agreement (¶ 7) but denies any wrongdoing. The Answer also includes as defenses that this Court lacks personal jurisdiction over Semico and, alternatively, that venue is improper and the case ought to be transferred to Arizona (Second & Third Defenses). Semico now presents these defenses by means of its Motion to Dismiss.

## Facts

*The interrelationship among Fine, Pro Tem and Semico*

Semico was established as an Arizona corporation effective on February 3, 1995. Feldhan Affid. ¶ 2 & Ex. 1. Jan-Charles Fine (hereinafter "Fine") was one of the two incorporators. Ibid. The Articles of Incorporation were prepared and signed in Arizona. Ibid. The Articles of Incorporation appointed two persons as Semico's initial Board of Directors, one of whom was Fine; the other was James Feldhan (hereinafter "Feldhan"). Ibid. Fine also was appointed as "Chief Executive Officer, Secretary and Treasurer" of Semico. Ibid.

Fine also was one of the two original shareholders in Semico. Feldhan Affid. ¶ 3 & Ex. 2. Initially Fine's shareholdings represented one-third of all outstanding shares. Ibid. A Shareholders' Agreement was prepared in Arizona and signed by both shareholders in Arizona

---

[1] Although the Complaint does not specify the section of Mass. G.L. c. 93A, presumably it intends to assert a claim under section 11.

in February 1995. Ibid.

Semico's offices always have been located in Arizona. Feldhan Affid. ¶ 4. Expansion twice required Semico to relocate from its original Phoenix, AZ office, in both instances to other Phoenix, AZ locations. Ibid. Presently Semico employees 15 persons, 13 of whom work at Semico's Phoenix, AZ office, and the other two work from their homes. Ibid. Semico has no employees in Massachusetts. Ibid..

Semico is a retail market research business. Feldhan Affid. ¶ 5. It markets analytical and consulting services to the semiconductor industry and affiliated industries. Ibid. Semico prepares research reports that it retails to end user companies in the semiconductor industry. Ibid. Semico also holds periodic conferences. Ibid. These conferences have been held either in California or in Arizona, except for one that was held in Taiwan. Ibid. None ever have been held in Massachusetts. Ibid.

Since its establishment in February 1995, most of Semico's Board of Directors meetings have been held at Semico's offices in Arizona. Feldhan Affid. ¶ 6. At least two meetings were held in California. Ibid. None of the meetings was held in Massachusetts. Ibid.

Likewise, all Stockholder meetings have been held at Semico's offices in Arizona. Feldhan Affid. ¶ 7. Since Semico's inception in 1995 Fine attended all of these Arizona meetings, with the exception of the Special Stockholders Meeting held January 26, 2005 called for the purpose of removing Fine from the Board of Directors, which he chose not to attend. Ibid.

Semico has no place of business in Massachusetts; it has no office anywhere outside of Arizona. Feldhan Affid. ¶ 8. Semico has no telephone listing in Massachusetts. Ibid. Semico

has no property or other assets in Massachusetts. Ibid.

Semico maintains a web site for advertising, report sales, and client downloads, but Semico relies primarily upon its employees and upon independent sales representatives such as Pro Tem to generate sales of its reports and services. Feldhan Affid. ¶ 10. In 2004, Semico only had four isolated sales to three customers in Massachusetts. Feldhan Affid. ¶ 9. Collectively, they accounted for approximately $33,000 in sales, out of Semico's total 2004 sales of almost $2 million. Ibid.

*Events leading up to the present Lawsuit*

Upon its establishment in February 1995, Semico entered into a Sales Representative Agreement with Pro Tem Partners, Inc. Feldhan Affid. ¶ 11. Fine is the sole owner, officer and director of Pro Tem. Ibid. Complaint ¶ 12. Fine drafted the Agreement. Ibid. The Agreement was signed in Arizona. Ibid. The Agreement appointed Fine's company, Pro Tem, as an exclusive sales representative in some States and as to some clients, and, in later versions, as a non-exclusive sales representative in some other countries, to market Semico's services. Ibid. From time to time thereafter, Fine elected to change the territories and clients that Pro Tem would service. Feldhan Affid. ¶ 12. In each case, Fine, still serving as Semico's Chief Executive Officer, Secretary, Treasurer and Director, would prepare a revised Sales Representative Agreement, which he submitted to James Feldhan, Semico's other officer working at Semico's Arizona office, for signature, and which Fine thereafter signed for Pro Tem. Ibid.

Under Pro Tem's last Sales Representative Agreement, drafted by Fine in March 2004

while he still was Chief Executive Officer of Semico, Fine designated Pro Tem's territory as "all customer sites within the Canadian Provinces of Ontario, Quebec and N[ew] B[runswick], and the New England, Middle Atlantic and Southeastern regions extending until South Carolina, of the United States . . . ." Feldhan Affid. ¶ 13 & Ex. 3B. The Agreement that Fine prepared also appointed Pro Tem as exclusive sales representatives of three companies, headquartered in New York, Connecticut and Colorado, respectively. Ibid.

Fine attended the Semico Board of Directors Meeting held at Semico's Nano Conference, in San Jose, California in early November 2004. Feldhan Affid ¶ 15. Shortly following that meeting, by letter dated November 9, 2004, Fine sent a letter to Feldhan, Semico's President, advising that he intended to pursue dissolution of Semico unless the President agreed to one of three proposals set forth in the letter. Fine Affid. ¶ 15 & Ex. 4. The proposals were that either Feldhan's position and authority be reduced, or Semico buy back Fine's shares at Fine's price. Ibid.

Fine's proposals were rejected, and Semico sought to prevent Fine from dissolving Semico. Feldhan Affid. ¶ 16. To that end, Feldhan called for a Special Stockholders Meeting, at Semico's Phoenix, Arizona offices, to vote on removing Fine and electing a new Director. Feldhan Affid. ¶ 16, 20..

Fine hired Snell & Wilmer, a large Phoenix, AZ law firm, to represent him and to block the Special Stockholders Meeting. Fine Affid. ¶ 16. Fine and his Phoenix AZ counsel made demands on Semico for production of substantial quantities of documents and information. Fine Affid. ¶ 17. Semico's counsel made it available for inspection, but Fine's Phoenix, AZ counsel did not follow up to review the documents and information. Ibid.

Prior to the Special Stockholders Meeting, Fine also engaged in conduct that was not consistent with Semico's best interests. Feldhan Affid. ¶ 18. He sought to have Semico hire high-salary analysts to provide new consulting capabilities, but refused to provide a list of customers and forecasts to justify these new hires. Ibid. Fine pressed Feldhan to fire three Semico employees, and Fine let these employees know that he wanted them gone. Ibid. Fine started a rumor that two of the employees were leaving. Ibid.

On the day before the scheduled Special Stockholders Meeting, Fine submitted his resignation as Chief Executive Officer, by letter, and it was accepted. Feldhan Affid. ¶ 19. At the Special Stockholders Meeting held at Semico's Phoenix, Arizona offices the following day, the Stockholders unanimously voted to remove Fine and voted in a new Director to replace Fine. Feldhan Affid. ¶ 20. The new Board removed Fine as Secretary and Treasurer and assigned these duties to the new Director. Ibid. Fine's company, Pro Tem, remained a Sales Representative of Semico. Ibid.

Until Fine resigned on January 25, 2005, as Chief Executive Officer, and until the Board removed him from his other offices on January 26, 2005, Fine had continued to serve as Semico's Chief Executive Officer, Treasurer and Secretary and continued to serve as one of Semico's two Directors since the founding of Semico in February 1995.. Feldhan Affid ¶ 14.

*Breakdown in the Relationship following Fine's resignation / removal from Semico*

Information from Pro Tem regarding its sales efforts and sales plans evaporated. Feldhan Affid. ¶ 21. Fine was informed that the President was to be his sole contact. Feldhan Affid. 41. Fine repeatedly contacted other individuals, against company policy, and also did not keep the

President informed of the communications. Ibid. Prior to his resignation and removal from Semico, information had flowed freely, and Fine and Feldhan also had held periodic planning meetings at Semico. Feldhan Affid. ¶ 21. However, now Semico did not know who Fine was prospecting. Ibid. Fine failed and refused to comply with requests for information, even after repeated requests, and pointing out to him how critical this information is for Semico to manage employees, sales, revenue and profits. Ibid. The information also was needed for discussions with a possible acquiring company which, ironically, would have been advantageous to Fine as he is a substantial shareholder of Semico. Ibid.

One of the major disagreements between Fine and Semico was that Fine believed that Semico was being operated as too much like a "mom and pop" operation. Feldhan Affid. ¶ 23. Following the election of a new Board of Directors and appointment of new Officers, and after internal discussions at Semico, Semico instituted some new policies to address this issue. Ibid. One of the new policies was adoption of guidelines for its Sales Tracking and Monitoring. Feldhan Affid. ¶ 24 & Ex. 5. After the Guidelines were successfully implemented with Semico's in-house sales employees, the Guidelines were sent to Fine on May 9, 2005. Ibid. Because of Pro Tem's poor performance and failure to communicate, Semico also sent to Pro Tem a Sales Performance Improvement Plan. Feldhan Affid. ¶ 25 & Ex.6. Pro Tem failed and refused to address the matters outlined in the Sales Performance Improvement Plan or to follow the Guidelines. Feldhan Affid. ¶ 30.

ProTem's Agreement was terminated because Fine continued to breach the provisions of the Agreement requiring that Pro Tem act in the best interests of Semico and. abide by the Company's policies in all matters relating to Semico and its products. Feldhan Affid. ¶ 30, 37-

42; Ex. 3B, Sec. 3.01, 3.05, 3.06.

*Alleged forced sale of Fine's Semico stock*

As early as the November 4, 2004 Board of Directors meeting, Fine said that he wanted to be bought out. Feldhan Affid ¶ 43. A few day later, Fine sent a letter offering to be bought out. Feldhan Affid. ¶ 44 & Ex. 4. Following Fine's resignation and removal from his positions at Semico, Fine continued to pursue having Semico purchase his stock ownership in Semico. Feldhan Affid. ¶ 43-48. Fine repeatedly told Semico's Vice President, Sherry Garber, in telephone calls over several months, and during a trip, that he wanted to be bought out. Feldhan Affid. ¶ 45, 46. Semico entertained an offer to buy out Fine, but the parties did not reach any agreement, and negotiations ceased. Feldhan Affid ¶ 48. In June 2005, Fine proposed to share the cost of an appraisal of the value of his shares. Ibid.

Argument

A party against whom a motion to dismiss under Fed. R. Civ. P. 12(b)(2) is filed bears the burden of proving the court's personal jurisdiction over the party challenging jurisdiction. Foster-Miller, Inc. v. Babcock & Wolcox Canada, 46 F.3d 138, 145 (1st Cir. 1995). "In determining whether a non-resident defendant is subject to its jurisdiction, a federal court exercising diversity jurisdiction 'is the functional equivalent of a state court sitting in the forum state.' " Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995), quoting Ticketmaster-NY, Inc. v. Alioto, 26 F.3d 201, 204 (1st Cir. 1994). Applying Massachusetts substantive law, ProTem must satisfy its "twofold burden of demonstrating that the Massachusetts Long Arm Statute, G.L. c.

223A, authorizes jurisdiction over [Semico], and that any such exercise comports with the constraints imposed by the United States Constitution." Noonan v. Winston Co., 902 F.Supp. 298, 302 (D. Mass. 1995), aff'd 135 F.3d 85 (1998). Barrett v. Lombardi, 239 F.3d 23 (1st Cir. 2001). Good Hope Indus., Inc. v. Ryder Scott Co., 378 Mass. 1, 5-6, 389 N.E.2d 76 (1979). The Court may consider affidavits and exhibits that bear on the issue of jurisdiction. See New Hampshire Ins. Guar. Ass'n v. Markem Corp., 424 Mass. 344, 347-49, 676 N.E.2d 809 (1997).

Although the Agreement contains a choice of law provision, that the Agreement be construed under the laws of Massachusetts (Feldhan Affid. Ex. 3B, p. 6) the Agreement does not contain any choice of forum provision. Under Massachusetts law, a choice of law provision is insufficient to support an exercise of personal jurisdiction over a nonresident defendant without satisfying the literal terms of the long-arm statute. Telco Comm v. New Jersey St. Firemen's Mut., 41 Mass. App. Ct. 225, 228, 669 N.E.2d 781 (1996). As in Telco, the language of the choice of law provision in the Agreement "pointed to Massachusetts law as controlling in case of dispute; it did not express an agreement of the parties that Massachusetts was to be the exclusive forum in which a legal proceeding could be maintained." Id. at 227. See "Automatic" Sprinkler Corp. of America v. Seneca Foods Corp., 361 Mass. 441, 280 N.E.2d 423 (1972),

A. Semico is not subject to jurisdiction in Massachusetts under the Massachusetts Long-Arm Statute

Semico is not subject to personal jurisdiction under the Massachusetts Long-Arm Statute because Pro Tem's cause of action does not arise from Semico's (a) transacting any business in Massachusetts, or (b) contracting to supply services or things in Massachusetts; or from (c) causing a tortuous injury by an act or omission in Massachusetts, or (d) by an act or omission

outside this commonwealth if it regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in Massachusetts; or from Semico (e) having an interest in, using or possessing real property in this commonwealth. See G.L. c. 223A, § 3.[2]

1. Pro Tem's cause of action does not arise from Semico's (a) transacting any business in Massachusetts, or (b) contracting to supply services or things in Massachusetts

(a) The business that Semico transacted with Pro Tem was the entering into successive Sales Agreements with Pro Tem, at the behest of Fine, who was both Pro Tem's sole owner and Semico's Chief Executive Officer, Secretary, Treasurer and Director.[3] All of such Agreements, including the one that Pro Tem alleges Semico interfered with, were signed by Semico in Arizona, not Massachusetts. Until Fine resigned as Chief Executive Officer and was removed from his other positions with Semico, much collaboration and planning between Pro Tem and Semico occurred during meetings at Semico's offices. Although notice of Semico's termination of the Agreement was sent to Fine, as required by the Agreement, termination of Pro Tem's Agreement was decided upon and effected at Pro Tem's offices in Arizona. Although the

---

[2] The remaining grounds for asserting personal jurisdiction (contracting to insure a person or property, or living as a party to a marriage contract) are clearly inapposite and presumably beyond any possible dispute.

[3] In view of Fine's dual relationship as senior officer of both Semico and Pro Tem, the Agreement "do[es] not even remotely resemble the usual arms-length negotiations encompassed by G.L. c. 93A." Simon v. Simon, 35 Mass. App. Ct. 705, 625 N.E. 2d 564 (1994). Thus, plaintiff cannot maintain a c. 93A claim against Semico because the Agreement was principally "private in nature." McAdams v. Mass. Mut. Life Ins. Co., 391 F.3d 287 (1st Cir. 2004). Ray-Tek Services, Inc. v. Parker, 64 Mass. App. Ct. 165 (2005) and cases cited. Additionally, "Massachusetts courts have held, without fail, that Chapter 93A does not apply to a mere breach of contract." Commercial Union Ins. v. Seven Provinces Ins., 217 F.3d 33, 44 (1st Cir. 2000) (Stahl, J. Concurring; citations omitted).

Complaint does not articulate the substance or nature of Semico's alleged "interference" with Pro Tem's Agreement, Semico did not send anybody to Massachusetts on or after the date of Fine's removal from his positions at Semico, and for at least a year prior to termination of the Agreement. Hence, any "interference" also must have originated at and emanated from Semico's Arizona offices.

(b) This case does not involve any dispute concerning Semico having contracted to supply any services or things to any customer in Massachusetts. And there is no requirement in the Agreement that Semico supply services or things to Pro Tem. To the contrary, the Agreement calls for Pro Tem to supply services to Semico. Pro Tem "represents it possesses the ability to promote the sale and use of services supplied by Semico and is desirous of developing demand for and selling such services on a basis in the territory and for the companies hereinafter described." Feldhan Affid. Ex. 3B, p. 1.

2. Pro Tem's cause of action does not arise from Semico causing a tortuous injury by an act or omission (c) in Massachusetts, or (d) outside this commonwealth if Semico regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in Massachusetts.

Neither of these grounds for asserting jurisdiction over a defendant are available to Pro Tem, because Pro Tem has not asserted any tort claims or any tort injuries. Pro Tem's Complaint asserts only a garden variety breach of contract, and a Mass. G.L. c. 93A action premised thereon. The damages sought are damages for breach of contract.

Because the c. 93A action cannot be maintained (supra, n. 3) it cannot serve as a basis for asserting jurisdiction. Further, the inclusion of the Mass. G.L. c. 93A claim does not

transmogrify Pro Tem's essentially contract claim into a tort claim. In any event, the "center of gravity of the circumstances that give rise to the claim is primarily and substantially within" Arizona, not Massachusetts. Kuwaiti Danish Computer Co. v. DEC, 438 Mass. 459, 781 N.E.2d 787 (2003). Cf Uncle Henry's, Inc. v. Plaut Consulting Co., 399 F.3d 33 (1st Cir. 2005). The Agreement was made in Arizona, any "interference" or lack of support necessarily relates to conduct of Semico's employees at Semico's Arizona offices, and Semico's decision to terminate the Agreement likewise was made in Arizona.

Finally, Semico has not regularly done or solicited business or engaged in any other persistent course of conduct in Massachusetts, or derived substantial income from business in Massachusetts. During calendar year 2004, Semico had only four sales to three customers in Massachusetts. Massachusetts is one of the states within Pro Tem's exclusive territory. To the extent that those sales were the result of Pro Tem's solicitation of business, that further reduces Semico's solicitation of business, because Pro Tem is totally independent from Semico. Feldhan Affid. Ex. 3B, Sec. 3.02. And because there were so few sales in Massachusetts, the impact on Pro Tem's Massachusetts sales, as compared with sales in the rest of its designated territories, would be negligible.

3. Semico (e) has no interest in, and is not using or possessing any real property in this commonwealth

The final basis for asserting jurisdiction over Semico, namely its ownership or use of property in Massachusetts also cannot be met, because Semico neither owns nor rents any property in Massachusetts. Feldhan Affid. ¶ 8.

B. Semico's contacts with Massachusetts are insufficient to satisfy the minimum contacts standard for a constitutional assertion of long-arm jurisdiction

Because Semico is not subject to jurisdiction under the Massachusetts Long-Arm Statute, the Court need not reach the second prong of Pro Tem's two-fold burden, namely, whether Semico's contacts with Massachusetts are sufficient to satisfy constitutional due process standards. If the issue were reached, Semico's contacts with Massachusetts are not sufficient to subject Semico to jurisdiction in Massachusetts under due process standards.

The constitutional due process standard permits a district court to exercise authority over a defendant only if the requirements for either general or specific jurisdiction are met. Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998). "Specific jurisdiction exists when there is a demonstrable nexus between a plaintiff's claims and a defendant's forum-based activities." Ibid. "General jurisdiction exists when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state." Ibid. In the present case, under the undisputable facts, Pro Tem cannot demonstrate the existence of either General Jurisdiction or of Specific Jurisdiction.

1. There is no General Jurisdiction.

The assertion of general jurisdiction comports with due process when two criteria are met. First, there must be "continuous and systematic general business contacts" between the foreign defendant and the forum. Helicópteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984). Second, the plaintiff must show that the exercise of jurisdiction would be reasonable. See Donatelli v. National Hockey League, 893 F.2d 459, 465 (discussing the five "gestalt factors" used to determine fundamental fairness of exercising jurisdiction). As a

threshold matter, "[t]he standard for evaluating whether these contacts satisfy the constitutional general jurisdiction test is considerably more stringent than that applied to specific jurisdiction questions." Noonan v. Winston Co., 135 F.3d 85, 93 (1st Cir. 1998) (internal quotation marks omitted).

The starting point for the analysis is Semico's business contacts with Massachusetts, because "[i]f the same do not exist in sufficient abundance . . . the inquiry ends." Donatelli, 893 F.2d at 465. Semico's contacts with Massachusetts are limited. Semico has no property and little presence in Massachusetts. Semico's own sales efforts in Massachusetts also were nominal, because Semico relied upon Pro Tem, operating as an independent contractor, who had the exclusive right to solicit customers in Massachusetts. Feldhan Affid. Ex. 3B. Semico's total sales in Massachusetts in fact have been few in number (four in 2004) and small in dollar value. Feldhan Affid. ¶ 9. Semico's contacts thus fail the legal test for "continuous and systematic" contacts. See e.g., Helicópteros, supra, 466 U.S. at 416. Noonan, supra, 135 F.3d at 93. Donatelli, supra, 893 F.2d at 470-71. In Glater v. Eli Lilly & Co., the defendant Indiana corporation employed eight sales representatives in New Hampshire, conducted business in the state, and advertised in trade journals that circulated there. 744 F.2d 213 (1st Cir. 1984). The Court held that these contacts did not suffice for the exercise of jurisdiction. Id. at 217. In short, Pro Tem cannot show that Semico's intermittent sales contacts with Massachusetts rise to the level of what the Court has previously understood as "continuous and systematic." As a result, Pro Tem cannot make a prima facie showing needed for the exercise of general personal jurisdiction.

2. <u>There is no Specific Jurisdiction</u>

Determining whether a plaintiff has alleged sufficient facts for a finding of specific jurisdiction requires a three-part analysis. <u>Phillips Exeter Acad. v. Howard Phillips Fund,</u> 196 F.3d 284, 288 (1st Cir. 1999). <u>First</u>, the court must ask whether the claim that undergirds the litigation directly relates to or arises out of the defendant's contacts with the forum. <u>Second,</u> the court must ask whether those contacts constitute purposeful availment of the benefits and protections afforded by the forum's laws. <u>Third</u>, if the proponent's case clears the first two hurdles, the court then must analyze the overall reasonableness of an exercise of jurisdiction in light of a variety of pertinent factors that touch upon the fundamental fairness of an exercise of jurisdiction. <u>Ibid.</u>

*a. The claim that undergirds the litigation does not directly relate to or arise out of Semico's contacts with Massachusetts.*-- This first requirement focuses on the nexus between defendant's contacts and the plaintiff's cause of action." <u>Ticketmaster-N.Y</u>., <u>supra</u>, 26 F.3d at 206. <u>Accord</u> <u>Sawtelle</u>, <u>supra</u>, 70 F.3d at 1389. The genesis of the litigation is the Agreement between Pro Tem and Semico. Not only was it signed by Semico in Arizona, but the signer for Pro Tem also was Semico's Chief Executive Officer, Fine. The disagreements between Pro Tem's sole owner and Semico that preceded and precursed the present action arose as disagreements between Fine and Semico relating to the conduct of Semico's business, not disagreements relating to the conduct of Pro Tem's business. Feldhan Affid. ¶ 15, 18, 23. It was only after Fine was discharged from his positions at Semico, that Fine recast these issues as issues concerning Pro Tem's conduct of its business. Thus, the change was not in Semico; the change was in Fine, who refused to respond to Semico's requests.

To the extent Pro Tem can cast the disagreements between Semico and Pro Tem as claims that Semico "unreasonably restricted Pro Tem's sales efforts," "engage[d] in a harassment campaign to unreasonably burden the Agreement" and "unreasonably delay[ed] reimbursement for travel expenses" (Complaint ¶ 5) the effects presumably impacted Pro Tem in all twenty states and the Provinces of Canada; there was no Massachusetts focus to these alleged activities. Massachusetts was but a small part of Pro Tem's territory, Pro Tem's sales in Massachusetts were nominal, and hence any impact in Massachusetts also would be correspondingly small. Indeed, there is no allegation that the alleged unreasonable restrictions or the harassment were directed toward any of Pro Tem's Massachusetts sales efforts. To the contrary, Pro Tem's complaints about delay in reimbursement for "travel expenses" (Complaint ¶ 5) presumably were for sales efforts outside of Massachusetts. Further, any actions, or failures to act, on the part of Semico of necessity occurred at its offices in Arizona, not Massachusetts.

*b. Semico's contacts with Pro Tem did not constitute purposeful availment of the benefits and protections afforded by Massachusetts' laws.* – When physical presence is lacking, the Court must look for some other indication that the defendant reached into the forum, such as mail or telephone contacts. See Burger King v. Rudzewicz, 471 U.S. 462, 476; Mass. Sch. of Law, supra, 142 F.3d at 36. A contact is related for purposes of a contract claim when the contact is "instrumental either in the formation of the contract or in its breach". See Phillips Exeter, supra, 196 F.3d at 289. That is not the case here. The Agreement was formed in Arizona. Much of the contact between Semico and Fine consisted in exchanges of emails, that could be sent or received in any geographic location. To the extent that letters were exchanged by means of the U.S. Mail at the address required by the agreement with Pro Tem, the genesis for Fine and

Semico resorting to these exchanges of letters was their disputes regarding Semico, that predated and triggered their disputes regarding Pro Tem. Semico's final decision to terminate the Pro Tem Agreement likewise was considered and decided upon and implemented at Semico's Arizona office, before the letter was sent to Pro Tem advising of the termination.

Further, in analyzing the effect of communications to and from Massachusetts, it is of some significance that the Agreement in issue here called for Pro Tem to provide services for Semico, not vice versa. See Good Hope Indus. Inc. v. Manor Care, Inc., 378 Mass. 1, 9 n. 14 (1979); Nichols Assoc., Inc. v. Starr, 4 Mass.App.Ct. 91, 341 N.E.2d 909 (1976). Further, these communications were purely fortuitous, due to the fact that Fine, who was the party obligated to perform under the Agreement, elected to have Pro Tem notices sent to his post office box in Massachusetts rather than elsewhere. See Good Hope, supra, 378 Mass. at 9 n.14; Nichols, supra, 4 Mass. App. Ct. at 96. These fortuitous communications do not amount to affirmative, intentional acts by Semico such that it is fair and reasonable to require Semico to come into Massachusetts to defend the action. Additionally, Pro Tem's performance under the Agreements was not limited to, or even focused upon Massachusetts; it was to take place in approximately twenty States, some Provinces of Canada, and in other countries. Although Massachusetts was among the approximately twenty states where Pro Tem was entitled to solicit business for Semico, none of the Agreements required Pro Tem to undertake any specific contractual responsibilities in Massachusetts.

*c. It would be fundamentally unfair to require Semico to defend itself in Massachusetts.* – The gravamen of this controversy is a dispute between Semico and Fine, a stockholder of Semico and its former Chief Executive Officer, Treasurer, Secretary and a Director. Fine is also

the sole owner of Pro Tem. When he was Chief Executive Officer, Secretary, Treasurer and a Director of Semico, he drafted Agreements for his company, Pro Tem, essentially giving himself exclusive sales territories on favorable terms. When Fine tried to use his positions to relegate Semico's president, Feldhan, to an inferior position, or to force Semico to buy him out on his terms, under threat of seeking dissolution of Semico, his plan backfired. Instead, Fine was removed from all offices that he had held at Semico.

Thereafter, Fine retaliated by simply refusing to cooperate with Semico. In his role as the sole employee of "Pro Tem", Fine refused to channel his communications through Semico's president, as required. Fine refused to provide fundamental information needed for Semico to plan and forecast – information that Fine previously had routinely provided. Fine failed to pursue sales leads or to follow up on renewals with existing customers.

Fine was one of the two original incorporators and directors of Semico when it was formed in Arizona. The initial Agreement with Pro Tem was signed in Arizona. Later revised Agreements were initiated by Fine, who at all those times also was Semico's Chief Executive Officer, Treasurer, Secretary and Director. All of the later revised Agreements were presented to Semico at its Arizona office and signed by Semico in Arizona. Thus, the genesis of the present dispute lies in Arizona, not Massachusetts, and any litigation belongs in Arizona, not Massachusetts. Because Fine previously engaged Arizona counsel, the Agreement related to an Arizona corporation, and due to his positions and stockholdings in Semico Fine had every reason to be present in Arizona with some regularity, it is fair to require the parties to enforce any rights they may have in the Arizona courts.

**Conclusion**

Upon the foregoing points and authorities the defendant Semico Research Corp. respectfully requests that its Motion to Dismiss be Allowed and that this action either be dismissed or transferred to the United States District Court for the District of Arizona..

By its attorneys,

Joseph F. Ryan
BBO# 435720

Digitally signed by Joseph F. Ryan BBO# 435720
DN: cn=Joseph F. Ryan BBO# 435720, c=US, o=Lyne Woodworth & Evarts LLP
Date: 2005.12.19 15:50:20 -05'00'

Joseph F. Ryan BBO# 435720
Lyne Woodworth & Evarts LLP
600 Atlantic Avenue
Boston, MA 02210
Telephone 617/523-6655 - Telecopy 617/248-9877
E-mail: Jryan@LWELaw.com